Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| ISMAEL G. CUEVAS RODRÍGUEZ<br><br>Peticionario<br><br>v.<br><br>GISELA MIRANDA BENÍQUEZ<br><br>Recurrida | KLCE202401195 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.:<br>F FI2009-0010<br><br>Sobre:<br>Filiación |
|---|---|---|

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 8 de noviembre de 2024.

Comparece Ismael G. Cuevas Rodríguez (en adelante, peticionario) mediante una *Urgente Petición de Certiorari* para solicitarnos la revisión de la *Orden* emitida y notificada el 8 de octubre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Carolina (en adelante, TPI).[1] Mediante la *Orden* recurrida, el foro primario impuso una sanción de $500.00 dólares en honorarios a favor de Gisela Miranda Beníquez (en adelante, recurrida) y ordenó al peticionario a cumplir con un descubrimiento de prueba. Sobre dicha *Orden,* el peticionario presentó una oportuna solicitud de reconsideración, la cual fue denegada.[2]

Por los fundamentos que expondremos, se *desestima* el auto de *Certiorari* por falta de jurisdicción.

---

[1] Apéndice del recurso, a la pág. 15.
[2] *Íd.*, a las págs. 16-20.

Número Identificador

RES2024_____

I

De lo que se desprende de los autos ante nuestra consideración, la controversia del título dio inicio como parte del trámite de un incidente sobre revisión de pensión alimentaria.

Allá para el 8 de octubre de 2024, la recurrida incoó una *Urgentísima moción solicitando sanciones y otros extremos.*[3] Adujo que el caso del título tenía una vista de revisión de pensión alimentaria para el día siguiente. Acotó que las partes se encontraban en medio del descubrimiento de prueba, esperando recibir las contestaciones a un pliego de interrogatorio sometido al peticionario. Alegó que el peticionario, quien tenía dos representantes legales, informó por conducto de uno, que se encontraban en proceso de contestar el mismo, pero, por conducto del otro, que estaba evaluando la posibilidad de asumir capacidad económica. A su vez, esbozó que el peticionario no había cumplido con el descubrimiento de prueba cursado hacía tres (3) meses. Acentuó, que ya el caso llevaba ocho (8) meses en este proceso de revisión de pensión alimentaria. Indicó que había realizado todas las gestiones posibles para resolver las controversias relacionadas al descubrimiento de prueba con la otra parte, pero no tuvo éxito. A tenor, solicitó al foro de instancia que ordenara al peticionario a contestar el interrogatorio, a producir los documentos requeridos y que se le condenara al pago de sanciones y honorarios de abogado. Además, dado a la situación alegada, solicitó que la vista fuese transferida.

En respuesta, el mismo día en que se presentó el antedicho escrito, entiéndase, el 8 de octubre de 2024, el tribunal de instancia emitió la *Orden* recurrida. En ella, el foro de instancia dispuso:

HA LUGAR. CUMPLA EL DEMANDANTE EN 5 DÍAS.
EN ESOS MISMOS 5 DÍAS DEBE PAGAR $500.00 DE
HONORARIOS A LA DEMANDADA. SE REFIERE AL

---

[3] Apéndice del recurso, a las págs. 1-4.

EPA PARA QUE RESEÑALE Y TOME CONOCIMIENTO DE QUE EL DEMANDANTE PROVOCÓ QUE LA VISTA DE ALIMENTOS TENGA QUE SER RESEÑALADA. NOTIFICAR DE INMEDIATO.[4]

Ahora bien, al día siguiente de la emisión y notificación de la *Orden* recurrida, entiéndase, el 9 de octubre de 2024, el peticionario, en reacción al pedimento de la recurrida *-pero, resuelto por el TPI-*, instó una *Urgente moción en oposición a solicitud de sanción, informativa y en solicitud de reconsideración de orden.*[5] Expuso, en síntesis, que el foro primario atendió y resolvió la solicitud de la recurrida sin antes haberle dado la oportunidad de expresarse. Arguyó que la vista no se suspendió por causas atribuibles a este, sino a la recurrida. Además, manifestó que la recurrida también tenía descubrimiento de prueba pendiente, y que, por dicha razón, no habían podido tomar una decisión sobre si el peticionario asumiría o no capacidad económica. Solicitó, en lo pertinente, que se reconsiderara el dictamen mediante el cual se le impuso la sanción.

Por su parte, el 11 de octubre de 2024, la recurrida presentó una *Urgente moción en oposición.*[6] En reacción, el 18 de octubre de 2024, el peticionario presentó una *Urgente moción de réplica a urgente moción en oposición y otros extremos.*[7]

En respuesta y en lo atinente, el tribunal de instancia, en atención a los escritos posteriores a la *Orden* emitida y notificada el 8 de octubre de 2024, dispuso mediante *Orden,* emitida el 15 de octubre de 2024, y notificada el 22 de octubre de 2024, lo siguiente:

Atendidas las **Mociones** presentadas por las **partes** en el caso de epígrafe, este Tribunal resuelve lo siguiente:

1. **"Urgente Moción en Oposición a Solicitud de Sanción, Informativa y en Solicitud de Reconsideración de Orden"** presentada el 9 de octubre de 2024, por la parte demandante a través de su representante legal:

---

[4] *Íd.,* a la pág. 15.
[5] Apéndice del recurso, a las págs. 16-20.
[6] *Íd.,* a las págs. 29-35.
[7] *Íd.,* a las págs. 51-58.

Véase otra orden.

[. . .].

6. **"Moción de Réplica" presentada el 11 de octubre de 2024, por la parte demandada, por conducto de su representante legal:**

Enterado.

7. **"Urgente Moción en Oposición" presentada el 11 de octubre de 2024, por la parte demandada, por conducto de su representante legal:**

Atendidas las posiciones de las partes, se deniega la "Urgente Moción en Oposición a Solicitud de Sanción, Informativa y en Solicitud de Reconsideración y Orden" presentada por el demandante el 9 de octubre de 2024.[8]

Así las cosas, mediante *Orden*, emitida el 24 de octubre, y notificada el 30 de octubre de 2024, y en atención a una *Moción en cumplimiento a la Regla 34.1 de Procedimiento Civil*, presentada por el peticionario el mismo 22 de octubre de 2024, el foro primario dejó sin efecto la sanción de $500.00 dólares, impuesta al peticionario, y exhortó a las partes a reunirse para resolver toda controversia relacionada al descubrimiento de prueba.[9]

Luego, el mismo día en el cual se notificó la antedicha *Orden*, entiéndase, el 30 de octubre de 2024, el peticionario presentó el recurso de *Certiorari* ante nuestra consideración.

Junto al recurso, el peticionario presentó una *Moción urgente en auxilio de jurisdicción y para la suspensión del término de cumplimiento de sanciones y descubrimiento de prueba*. Mediante *Resolución* emitida el 31 de octubre de 2024, declaramos *Ha Lugar* la moción en auxilio de jurisdicción y, en consecuencia, se decretó la paralización de los procedimientos ante el Tribunal de Primera Instancia, hasta que otra cosa dispusiera este foro. En la misma *Resolución*, concedimos a la parte peticionaria hasta el 7 de

---

[8] Apéndice del recurso, a las págs. 48-50. (Cita depurada).
[9] Véase anejo de la *Moción informativa sobre eventos posteriores a la radicación del recurso y reiterando petición de certiorari*.

noviembre de 2024, para acreditar el cumplimiento con la Regla 33 (A), la Regla 33 (B) del Reglamento de este Tribunal de Apelaciones.[10] De otra parte, concedimos a la parte recurrida hasta el 12 de noviembre de 2024, para presentar su postura sobre los méritos del recurso de *Certiorari* presentado.

Así las cosas, el 1 de noviembre de 2024, compareció el peticionario para acreditar el cumplimiento con nuestra *Resolución* del 31 de octubre de 2024. Conviene mencionar que, en esta misma fecha, el peticionario presentó una *Moción informativa sobre eventos posteriores a la radicación del recurso y reiterando petición de certiorari.* Adujo, en síntesis, que, **el mismo día** en que se instó el recurso apelativo ante nos, pero en horas de la mañana, el tribunal de instancia notificó una *Orden* en la cual, en lo pertinente, dejó sin efecto la sanción de $500.00 dólares que le fue impuesta.[11] Arguyó desconocer sobre dicha *Orden* al momento de presentar el recurso y la solicitud en auxilio de jurisdicción. Acotó que, aunque el foro primario dejo sin efecto, por el momento, la sanción, esta Curia debía intervenir con el curso decisorio. Manifestó que mantenía su interés en que se interviniera con la *Orden* recurrida, puesto a que el foro primario nada distinto dispuso en cuanto a lo del descubrimiento de prueba.

Por otro lado, conforme a la Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones,[12] este Tribunal tiene la facultad de prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos en cualquier caso ante su consideración, con el propósito de lograr su más justo y eficiente despacho". En consideración a lo anterior, eximimos a la parte recurrida de cumplir

---

[10] 4 LPRA Ap. XXII-B, R.33(A) y (B).
[11] Véase anejo de la *Moción informativa sobre eventos posteriores a la radicación del recurso y reiterando petición de certiorari.*
[12] 4 LPRA Ap. XXII-B, R.7 (B)(5).

con nuestra *Resolución* del 31 de octubre de 2024.  Dicho lo anterior, procederemos a exponer el derecho aplicable.

II

### A. Expedición del Recurso de *Certiorari*

Los recursos de *Certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de las Reglas de Procedimiento Civil.[13] Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *Certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

[…].

El recurso de Certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de Certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[14]

[…].

Por su parte, la Regla 52.2 (b) dispone sobre los términos y efectos de la presentación de un recurso de *Certiorari* que:

[…].

Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación

---

[13] 32 LPRA Ap. V, R. 52.1.
[14] *Íd.*

de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari*.

[…].[15]

Establecido lo anterior, precisa señalar que el recurso de *Certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[16] A diferencia del recurso de apelación, el auto de *Certiorari* es de carácter discrecional.[17] La discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[18] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[19] Por otra parte, la Regla 40 del Reglamento del Tribunal de Apelaciones esgrime que el Tribunal deberá considerar los siguientes criterios para expedir un auto de *Certiorari:*

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del

---

[15] *Íd.*

[16] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023)*; 800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020).

[17] *Rivera Figueroa v. Joes's European Shop,* 183 DPR 580, 596 (2011).

[18] *Mun. de Caguas v. JRO Construction, Inc.* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013).

[19] *SLG Zapata-Rivera v. J.F. Montalvo,* supra, 435.

pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. [20]

El Tribunal Supremo de Puerto ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[21] Quiérase decir, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[22]

## B. Falta de jurisdicción

La jurisdicción es el poder o la autoridad que posee un tribunal para resolver las controversias presentadas ante su consideración.[23] Los tribunales adquieren jurisdicción por virtud de ley, por lo que no pueden arrogársela, ni las partes pueden otorgársela.[24] Es norma reiterada en nuestro ordenamiento, que "los tribunales deben ser celosos guardianes de su jurisdicción y que no tienen discreción para asumir jurisdicción allí donde no la tienen".[25] Igualmente, nuestro Tribunal Supremo ha sido constante en expresar que las cuestiones relativas a la jurisdicción constituyen materia privilegiada.[26] De manera que, deben ser resueltas con preferencia, pues, incide directamente sobre el poder que tiene un

---

[20] 4 LPRA Ap. XXII-B, R.40.
[21] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994).
[22] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).
[23] *R&B Power, Inc. v. Junta de Subasta ASG,* 2024 TSPR 24, 213 DPR ___ (2024); *AAA v. UIA*, 199 DPR 638, 651-652 (2018).
[24] *Ríos Martínez, Com. Alt. PNP v. CLE,* 196 DPR 289, 296 (2016).
[25] *Peerless Oil v. Hnos. Torres Pérez*, 186 DPR 239, 250 (2012); *S.L.G. Szendrey-Ramos v. F. Castillo,* 169 DPR 873, 882 (2007).
[26] *R&B Power, Inc. v. Junta de Subasta ASG,* supra.

tribunal para adjudicar las controversias.[27] Por tal motivo, cuando un tribunal carece de jurisdicción, debe declararlo y desestimar la reclamación sin entrar en sus méritos.[28] De lo contrario, cualquier dictamen en los méritos será nulo y no podrá ejecutarse.[29] Es decir, una sentencia, dictada sin jurisdicción por un tribunal, es una sentencia nula en derecho y, por tanto, inexistente.[30]

Cónsono con lo anterior, la Regla 83 del Reglamento del Tribunal de Apelaciones,[31] confiere facultad a este Tribunal para a iniciativa propia, o a petición de parte, desestimar un recurso o denegar un auto discrecional cuando este foro carece de jurisdicción.

### C. La Academicidad

Sabido es que el principio de justiciabilidad persigue evitar que los Tribunales emitan decisiones en casos que realmente no existen o dictar una sentencia que no tendrá efectos prácticos sobre una controversia.[32] En ese contexto, un asunto no es justiciable cuando (i) se trata de resolver una cuestión política; (ii) una de las partes carece de legitimación activa para promover un pleito; (iii) después de comenzado el litigio hechos posteriores lo tornan en académico; (iv) las partes pretenden obtener una opinión consultiva o, (v) cuando se pretende promover un pleito que no está maduro. [33]

En cuanto a la doctrina de academicidad, esta persigue: (i) evitar el uso inadecuado de recursos judiciales; (ii) asegurar que haya suficiente adversidad para que las controversias se presenten y defiendan competente y vigorosamente; y (iii) obviar precedentes

---

[27] *Torres Alvarado v. Madera Atiles,* 202 DPR 495, 500 (2019); *Fuentes Bonilla v. ELA et al.,* 200 DPR 364, 372 (2018).

[28] 4 LPRA Ap. XXII-B, R. 83; *R&B Power, Inc. v. Junta de Subasta ASG,* supra.

[29] *Bco. Santander v. Correa García,* 196 DPR 452, 470 (2016); *Maldonado v. Junta Planificación,* 171 DPR 46, 55 (2007).

[30] *Montañez v. Policía de P.R.,* 150 DPR 917, 921-922 (2000).

[31] 4 LPRA Ap. XXII-B, R. 83 (C).

[32] *Moreno v. Pres. U.P.R. II,* 178 DPR 969, 973 (2010).

[33] *Asoc. Fotoperiodistas v. Rivera Schatz,* 180 DPR 920, 932 (2011); *Crespo v. Cintrón,* 159 DPR 290, 298 (2003); *Noriega v. Hernández Colón,* 135 DPR 406, 421–22 (1994).

innecesarios.[34] En esencia, se sostiene que un caso es académico cuando se intenta obtener: (i) un fallo sobre una controversia disfrazada, que en realidad no existe; (ii) una determinación de un derecho, antes de que haya sido reclamado; o (iii) una sentencia sobre un asunto que, al dictarse, no podrá tener efectos prácticos sobre una controversia existente.[35]

Es menester destacar que, cuando un Tribunal atiende un planteamiento de academicidad, nuestro ordenamiento jurídico le impone la obligación de desestimar el recurso, si de los hechos o del derecho aplicable surge que las circunstancias han variado de tal forma que no existe una controversia vigente entre partes adversas que amerite su intervención.[36] Nuestro máximo foro ha expresado que "una controversia puede convertirse en académica cuando los cambios fácticos o judiciales acaecidos durante el trámite judicial torna en ficticia su solución, convirtiéndose así en una opinión consultiva sobre asuntos abstractos".[37] Por ello, al momento de evaluar la academicidad, debemos concentrarnos en "la relación existente entre los eventos pasados que dieron inicio al pleito y la adversidad presente".[38]

### III

De entrada, como Tribunal revisor, nos corresponde auscultar nuestra propia jurisdicción como paso previo a entender en los méritos de un recurso apelativo. Ello, puesto a que las cuestiones relacionadas a la jurisdicción deben ser resueltas con preferencia, ya que a inciden directamente sobre el poder que tiene un tribunal

---

[34] *Asoc. Fotoperiodistas v. Rivera Schatz, supra,* a la pág. 932*; Torres Santiago v. Depto. de Justicia,* 181 DPR 969, 982 (2010); *P.N.P. v. Carrasquillo,* 166 DPR 70, 75-76 (2005); *C.E.E. v. Depto. de Estado,* 134 DPR 927, 935-936 (1993).

[35] *Asoc. Fotoperiodistas v. Rivera Schatz,* supra, a la pág. 932, citando a *San Gerónimo Caribe Project v. A.R.Pe.,* 174 DPR 640, 652 (2008).

[36] *C.E.E. v. Depto. de Estado,* supra, a la pág. 935-936.

[37] *Asoc. Fotoperiodistas v. Rivera Schatz,* supra, a la pág. 932-933; *San Gerónimo Caribe Project v. A.R.Pe., supra,* a las págs. 652–653; *Báez Díaz v. E.L.A.,* 179 DPR 605, 617 (2010).

[38] *P.P.D. v. Gobernador I,* 139 DPR 643, 676 (1995).

para adjudicar las controversias.[39] Por consiguiente, cuando este Tribunal carece de jurisdicción, lo apropiado es que desestimemos la reclamación, sin entrar en sus méritos.[40] En línea de lo anterior, y luego de haber examinado los autos ante nuestra consideración, disponemos que en este caso no tenemos jurisdicción.

En primer lugar, en el presente caso, junto al recurso de *Certiorari*, se instó una solicitud en auxilio de jurisdicción con el fin de que se paralizaran los procedimientos ante el foro de instancia. Previamente, al examinar el recurso instado, así como la solicitud para que se paralizaran los procedimientos en el foro inferior, este Panel acordó paralizar los procesos. Empero, y posterior a emitir la antedicha determinación, este Panel advino en conocimiento de que, previo a que dispusiéramos paralizar los procesos, el tribunal recurrido había modificado, mediante *Orden,* uno de los asuntos sobre los cuales se recurrió ante este Tribunal, entiéndase, la determinación de imponer una sanción al peticionario. Es harto conocido que "una solicitud de *certiorari* no suspenderá los efectos de una sentencia ni los procedimientos ante el Tribunal de Primera instancia, salvo orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones".[41] Ahora bien, una vez decretada la paralización, el tribunal sujeto a revisión no adquiere jurisdicción nuevamente hasta tanto reciba el mandato del tribunal revisor.[42] Así, pues, debido a las implicaciones jurisdiccionales que conlleva la presentación de un recurso ante un foro apelativo, "los tribunales concernidos deben estar atentos al desarrollo del caso a nivel del tribunal revisor y a la etapa procesal en la que éste se encuentra, previo a retomar acción en el mismo".[43]

---

[39] *Torres Alvarado v. Madera Atiles,* supra, a la pág. 500; *Fuentes Bonilla v. ELA et al.*, supra, a la pág. 372.
[40] 4 LPRA Ap. XXII-B, R. 83; *R&B Power, Inc. v. Junta de Subasta ASG,* supra.
[41] Regla 45 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40.
[42] *Colón y otros v. Frito Lays,* 186 DPR 135, 154 (2012).
[43] *Íd.,* a la pág. 150.

Con lo anterior en mente, y enfocándonos en los trámites procesales del caso de marras, lo cierto es que el foro de instancia, al emitir la *Orden,* mediante la cual dispuso dejar sin efecto las sanciones impuestas, actuó previo a que esta Curia emitiera y notificara a dicho tribunal la paralización de los procedimientos. Por tanto, el foro de instancia actuó con jurisdicción. Sin embargo, al tomar conocimiento de la *Orden* emitida por el foro de instancia y luego de reexaminar el recurso ante nuestra consideración, coincidimos en que, no contamos con jurisdicción para revisar lo relativo a la sanción impuesta y luego eliminada, ya que versa sobre un asunto académico. Según señalamos en nuestra previa exposición doctrinal, esta Curia está obligada a desestimar un recurso si surge que las circunstancias han variado de tal forma que no existe una controversia que amerite nuestra intervención.[44] Precisamente, esto fue lo que ocurrió en el presente caso, cuando el tribunal de instancia dispuso dejar sin efecto la sanción recurrida.

En segundo lugar, en lo referente a la orden sobre descubrimiento de prueba, juzgamos que lo que se pretende es que revisemos ciertas actuaciones del juzgador de instancia en el trámite ordinario del caso, específicamente, en cuanto al manejo de sala. Cuando a nuestra consideración se presentan asuntos de manejo de sala, no tenemos facultad para alterar aquello que es parte del trámite ordinario de los casos ante consideración del foro primario.[45] Por otro lado, las cuestiones sobre descubrimiento de prueba no se encuentran entre las controversias que la Regla 52.1 de Procedimiento Civil[46] nos permite atender.

Es por todo lo anterior que procede la desestimación del recurso incoado.

---

[44] *C.E.E. v. Depto. de Estado,* supra, a las págs. 935-936.
[45] *BPPR v. SLG Gómez-López,* 2023 TSPR 145, 212 DPR ___ (2023); *Mejías v. Carrasquillo,* 185 DPR 288, 306-307 (2012).
[46] 32 LPRA Ap. V, R. 52.1.

IV

Por los fundamentos que anteceden, se *desestima* el auto de *Certiorari* por falta de jurisdicción.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones